UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

FILED

DEC 17 2015

CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>THOMAS ESPINOZA,<br><br>        Defendant. | 3:15-CR-30077-RAL<br><br><br>OPINION AND ORDER ADOPTING<br>REPORT AND RECOMMENDATION |

Thomas Espinoza ("Espinoza") moved to suppress evidence seized and statements made by him to tribal law enforcement on June 7 and 8, 2015. Doc. 19. After an evidentiary hearing was held, Magistrate Judge Mark A. Moreno issued a Report and Recommendation, recommending that Espinoza's motion be granted in part and denied in part. Doc. 30. Judge Moreno concluded that the post-arrest statements should be admissible at trial, but evidence seized and the pre-arrest statements should be excluded. Espinoza timely filed an objection to the Report and Recommendation, objecting only to Judge Moreno's determination that Espinoza's post-arrest statements are admissible at trial. Doc. 31. This Court reviews a report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." "In the absence of an objection, the district court is not required 'to give any

1

more consideration to the magistrate's report than the court considers appropriate.'" United States v. Murrillo-Figueroa, 862 F. Supp. 2d 863, 866 (N.D. Iowa 2012) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)). This Court has conducted a de novo review of the record, and for the reasons explained below, this Court overrules Espinoza's objection and adopts the Report and Recommendation.

## I. FACTS

Around midnight on June 7, 2015, Officer Carl Hunger ("Officer Hunger") of the Rosebud Police Department was dispatched to Sunrise Apartments, apartment 904, in Mission, South Dakota, in response to a call received from Earlene Peneaux ("Peneaux").[1]  T. 11–13. Peneaux had called 911 and reported that her boyfriend was trying to kill her.  T. 11–12. Dispatch was unable to keep Peneaux on the phone and several unsuccessful attempts were made to reestablish contact.  T. 12.  Officer Hunger was the first to arrive at the Sunrise Apartments and parked approximately thirty feet from the apartment's front doorway.  T. 14–15.  Mission City Police Officer Louis Young ("Officer Young") responded shortly thereafter.  T. 14.  Officer Hunger did not know who lived in apartment 904 or how many people would be inside.  T. 14.

Upon exiting his patrol vehicle, Officer Hunger observed a female, whom he recognized from past encounters as Peneaux, run out of the apartment.  T. 14–15.  Officer Hunger testified that Peneaux appeared to be frantic, in a hurry, and frightened.  T. 15.  As Peneaux was running towards Officer Hunger, she said, "Psycho."  T. 15, 43.  Officer Hunger asked Peneaux what had happened, but Peneaux did not respond in any way.  T. 16, 61.  Officer Hunger then asked

---

[1]Espinoza was living at apartment 904 during all times relevant to his subsequent arrest.  T. 74.

Peneaux whether the male was still inside, and again, Peneaux did not answer. T. 37. At that time, Officer Hunger did not know if any weapons were inside the apartment, and in the darkness of the night, he could not see any visible injuries on Peneaux. T. 16, 39.

Seconds later and while still standing by his patrol vehicle, Officer Hunger observed a male, whom he recognized from prior arrests as Espinoza, in the window of the upstairs apartment. T. 15, 17–18. Without consent and without a warrant, Officer Hunger then entered the apartment through an open door, went to the upstairs bedroom, and made contact with Espinoza. T. 17–19, 44. Officer Hunger asked Espinoza what had happened, and Espinoza stated that he "got into it with [Peneaux] and she attacked him." T. 33. Espinoza had several scratches on his face that were bleeding, and Espinoza showed Officer Hunger marks on his arm where he said Peneaux had bit him. T. 19, 33–34. Espinoza was not placed under arrest at that time or handcuffed, but during the conversation Officer Hunger detected an odor of alcohol from Espinoza's breath and observed that he had red, bloodshot, and glossy eyes. T. 19, 21, 33–34, 56. At some point, Officer Young entered the upstairs bedroom and told Officer Hunger that Peneaux reported that Espinoza had assaulted her. T. 46. Officer Hunger testified that he did not give Espinoza Miranda warnings in the bedroom because Officer Hunger, at that time, was treating both Espinoza and Peneaux as victims. T. 57. While Officer Hunger, Officer Young, and Espinoza were in the upstairs bedroom, Peneaux re-entered the apartment and attempted to force her way into the bedroom. T. 20. Because of this, Officer Hunger handcuffed and arrested Peneaux for disorderly conduct and escorted her to his patrol vehicle. T. 21.

While outside of his patrol vehicle, Officer Hunger questioned Peneaux in an attempt to gather more information related to the incident. T. 21–22. With the aid of his flashlight, Officer

3

Hunger observed that Peneaux had marks on the side of her neck and an injury to her face; both injuries were consistent with the information Peneaux provided, and Officer Hunger testified that he believed that Peneaux's injuries were consistent with strangulation and being struck with a hand or fist. T. 21–23, 53; Ex. 7. Officer Hunger testified that based on the observations made and the information gathered from both Peneaux and Espinoza, he believed that Peneaux was the victim of an assault and that he had probable cause to arrest Espinoza. T. 24, 33.

Officer Hunger then entered the apartment for a second time to arrest Espinoza. T. 25. Consistent with the information gathered from Peneaux, Officer Hunger seized a folding knife from Espinoza's pants pocket while performing a search incident to arrest. T. 25–26, 61. At Espinoza's request, Officer Hunger took photographs of Espinoza's injures which included scratches on his face, bite marks on his arms, and an abrasion on his elbow. T. 26; Ex. 6. Ultimately Officer Britney Larvie transported Espinoza to the adult correctional facility on the Rosebud Reservation. T. 27, 54.

Approximately thirty-two hours later, around 9:00 a.m. on June 8, 2015, Special Agent Robert Sedlmajer of the Rosebud Police Department ("Agent Sedlmajer") interviewed Espinoza at the Rosebud correctional facility. T. 65–67, 72. Espinoza was advised of and waived his Miranda rights. T. 67–68; Ex. 2. The advisement form also included notations that Espinoza was "healthy," not under the influence of drugs or alcohol, and that he had not "tossed & turned." Ex. 2. Special Agent Sedlmajer testified that Espinoza was not handcuffed during questioning and that no threats or coercive tactics were made in an effort to force Espinoza to waive his Miranda rights. T. 69; Ex. 2. Espinoza then voluntarily spoke with Agent Sedlmajer about the June 7, 2015 incident. T. 70.

4

A federal grand jury later indicted Espinoza for Assault by Strangulation and Suffocation in violation of 18 U.S.C. §§ 1153 and 113(a)(8). Doc. 1. Espinoza moved to suppress the folding knife and all statements made to Officer Hunger and Agent Sedlmajer. Doc. 19. The Government opposed the motion. Doc. 22. Judge Moreno held an evidentiary hearing on October 29, 2015, during which he received three exhibits and heard testimony from Officer Hunger and Agent Sedlmajer. Doc. 28; T. 2. On November 24, 2015, Judge Moreno issued a Report and Recommendation, recommending that the folding knife and pre-arrest statements be excluded as fruits garnered from a poisonous tree, but determined that the post-arrest statements are admissible at trial because Officer Hunger had probable cause to arrest and question Espinoza when Officer Hunger entered Espinoza's apartment a second time. Notwithstanding the existence of probable cause, Judge Moreno alternatively held that Espinoza's post-arrest statements were sufficiently purged from any underlying taint because the post-arrest statements were obtained approximately thirty-two hours after the pre-arrest statements by a different officer, at a different location, and were obtained after Espinoza was advised of and waived his Miranda rights. Doc. 30 at 22–24.

## II. DISCUSSION

Espinoza objects only to Judge Moreno's determination that Espinoza's post-arrest statements are admissible at trial. Specifically, Espinoza objects to Judge Moreno's findings that "Espinoza's arrest was made with probable cause (based in part on Peneaux's disclosures and the injuries observed to her face and neck)" and that "there was probable cause to arrest and question Espinoza when Officer Hunger went into the apartment the second time." Doc. 31 at 1. Espinoza argues that there were two Fourth Amendment violations in this case; the first violation

5

was correctly noted in the Report and Recommendation, and the second violation occurred when Officer Hunger re-entered the residence without a warrant to arrest Espinoza. Doc. 31 at 2. Espinoza's main contention is that based on the totality of the circumstances there was insufficient evidence to support probable cause necessary to justify the second entry and arrest. Doc. 31 at 2. From there, Espinoza argues that the post-arrest statements were not too attenuated or purged from the taint, but instead were the direct result of the second illegal entry. Doc. 31 at 2–3.

"In determining whether probable cause exists to make a warrantless arrest, the court looks to the totality of the circumstances to see whether a prudent person would believe the individual had committed or was committing a crime." United States v. Blackmon, 662 F.3d 981, 985 (8th Cir. 2011) (quoting United States v. Segars, 31 F.3d 655, 659 (8th Cir. 1994)). In New York v. Harris, 495 U.S. 14 (1990), the Supreme Court of the United States clarified how the presence or absence of probable cause affects the admissibility of evidence that was obtained in violation of Payton v. New York, 445 U.S. 573 (1980), which held that the Fourth Amendment prohibits the police from effecting a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest. The Court in Harris held that "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of Payton." Harris, 495 U.S. at 21. The Court reasoned that the exclusionary rule does not bar evidence obtained outside the home because the purpose of Payton's holding is to protect the home and anything incriminating gathered from within, not elsewhere. Id. at 17–18, 20–21. Indirect fruits obtained from an illegal search or

6

arrest that lacked probable cause, the Court then explained, should be suppressed when the indirect fruits bear a sufficiently close relationship to the underlying Payton violation. Id. at 18–19 (citing Taylor v. Alabama, 457 U.S. 687 (1982); Dunaway v. New York, 442 U.S. 200 (1979); and Brown v. Illinois, 422 U.S. 590 (1975)); see also Wong Sun v. United States, 371 U.S. 471, 487–88 (1963).

After a de novo review of the record, this Court agrees with Judge Moreno that the second entry was supported by probable cause and that the exclusionary rule does not bar the subsequent statements under Harris because the totality of the circumstances would cause a reasonable person to believe that Espinoza had assaulted Peneaux. Peneaux had called dispatch and reported that her boyfriend was trying to kill her, and although Espinoza claims he was attacked and exhibited injuries of his own, Peneaux's injuries—marks on the side of her neck and an injury to the face—were decidedly more severe than Espinoza's and consistent with the information Peneaux had provided to Officer Hunger. See United States v. Horne, 4 F.3d 579, 589 (8th Cir. 1993) ("In establishing probable cause, law enforcement officials enjoy substantial latitude in interpreting and drawing inferences from factual circumstances."). With the existence of probable cause to justify Officer Hunger's second entry into the apartment to arrest and question Espinoza, the case then falls squarely within the ambit of the holding in Harris because the post-arrest statements were obtained at the Rosebud correctional facility. 495 U.S. at 21.

The Court in Harris, however, did not hold "that a statement taken by police while a suspect is in custody is always admissible as long as the suspect is in legal custody," and explained that some statements may be inadmissible if, for one example, they were obtained in violation of Miranda. Id. at 20. But after review of the record, no other violations are present in

7

Espinoza's case. There is no evidence that Miranda was violated, that Espinoza was coerced into giving statements, that the statements were given involuntarily, or that Espinoza was subjected to improper interrogation practices.[2]   Agent Sedlmajer did not have Espinoza handcuffed and did not use any threats or coercive tactics during the interview.   After Agent Sedlmajer advised Espinoza of his Miranda rights, Espinoza waived those rights, orally and in writing.

Finally, this Court agrees with Judge Moreno's alternative finding that Espinoza's post-arrest statements were sufficiently purged from the existence of any Payton violation.   "The general rule in a criminal proceeding is that statements and other evidence obtained as a result of an unlawful, warrantless arrest are suppressible if the link between the evidence and the unlawful conduct is not too attenuated." I.N.S. v. Lopez-Mendoza, 468 U.S. 1032, 1040–41 (1984) (citing Wong Sun, 371 U.S. at 487–88).   "The causal chain between an illegal arrest and a statement given later is broken, however, if the statement is sufficiently an act of free will to purge the primary taint." United States v. Hernandez-Hernandez, 384 F.3d 562, 565 (8th Cir. 2004) (quotations omitted).   A court must consider the following four factors to determine whether statements made after an illegal arrest are admissible: "(1) whether the suspect has been advised of his Miranda rights prior to giving his statement; (2) the temporal proximity of his statements

---

[2]Espinoza did not allege that Officer Hunger or Agent Sedlmajer employed an impermissible two-part interrogation technique, nor has the Court found any evidence in the record that would support such an argument.   See Missouri v. Seibert, 542 U.S. 600, 616–17 (2004) (holding that officer may not purposefully elicit an unwanted confession, provide Miranda warnings, and then elicit the confession again); see also Bobby v. Dixon, 132 S. Ct. 26, 31 (2011) (finding that later confession was not a result of impermissible two-step interrogation because during the first interrogation the defendant maintained that he did not commit the crime); United States v. Thomas, 664 F.3d 217, 223 (8th Cir. 2011) (finding questioning by officer was permissible because questions were asked to establish probable cause for arrest).   Espinoza also did not challenge the voluntariness of his post-arrest statements. T. 4.

8

to his illegal seizure; (3) the existence of intervening causes between the illegal arrest and the statements; and (4) the purpose or flagrancy of the official misconduct." United States v. Reinholz, 245 F.3d 765, 779 (8th Cir. 2001) (citing Brown, 422 U.S. at 603–04); see also Hernandez-Hernandez, 384 F.3d at 565 (providing that a voluntary statement given after Miranda warnings, by itself, does not render a statement admissible). In this case, Espinoza was advised of his Miranda rights and waived those rights orally and in writing. Espinoza made the post-arrest statements approximately thirty-two hours after his arrest. The statements were made at the Rosebud correctional facility, rather than at the Sunrise Apartments, and were obtained by Agent Sedlmajer, rather than Officer Hunger. And as stated above, during Agent Sedlmajer's questioning, Espinoza was neither handcuffed nor subject to threats or coercive tactics. Although Espinoza was in continuous custody at the Rosebud correctional facility, Espinosa did not present any evidence that he experienced unfavorable conditions, lack of food, or inadequate sleeping arrangements before being questioned by Agent Sedlmajer. See Taylor, 457 U.S. at 691 (holding that six hours between arrest and interrogation was not sufficiently attenuated because defendant was in continuous custody where he was subjected to multiple interrogations, fingerprinting, and placed in a lineup). After de novo review of the record and upon consideration of all the Brown v. Illinois factors, this Court finds that Judge Moreno correctly determined that the post-arrest statements were obtained under circumstances that were sufficiently purged from the underlying illegality. See United States v. Sepulveda–Sandoval, 729 F. Supp. 2d 1078, 1108–09 (D.S.D. 2010) (finding post-Miranda statements were admissible where Miranda rights were waived, there was a four-and-one-half-hour delay between statements and illegal stop, the statements were obtained at a different location and were taken by an officer

9

from a different agency who was not involved in the stop, the questioning was not purposeful or flagrant, and the questioning officer was not on notice that the defendant had been subjected to an illegal detention); see also United States v. Bear Killer, 534 F.2d 1253, 1257 n.3 (8th Cir. 1976) (holding statements given nine and one half hours and twelve hours after arrest were voluntary and admissible); United States v. Lopez–Garcia, 565 F.3d 1306, 1315–16 (11th Cir. 2009) (holding statements made to officer were too attenuated to have suffered any taint where the statements were made the following day, the questioning was conducted by different officers, and there was no indication that the illegal stop and arrest of defendant served an ulterior motive of the police); see also United States v. Stark, 499 F.3d 72 76–77 (1st Cir. 2007) (finding two-day delay sufficient attenuation and citing cases finding that delay of eleven hours and six days was also adequate). Therefore, Espinoza's objection to the Report and Recommendation is overruled.

## III. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Espinoza's Motion to Suppress, Doc. 19, is granted in part and denied in part. It is further

ORDERED that the Report and Recommendation, Doc. 30, is adopted.

DATED this _17th_ day of December, 2015.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

10